Mary Belle Reid KEMP,
Plaintiff-Appellant,

v.

REPUBLIC NATIONAL LIFE
INSURANCE COMPANY,
Defendant-Appellee.

No. 80–3774.

United States Court of Appeals,
Fifth Circuit.
Unit A

June 30, 1981.

John I. Feduccia, Hammond, La., for plaintiff-appellant.

Montgomery, Barnett, Borwin & Read, Sylvia Landry Holder, New Orleans, La., for defendant-appellee.

Before REAVLEY, RANDALL and SAM D. JOHNSON, Circuit Judges.

REAVLEY, Circuit Judge:

Mary Belle Reid Kemp [Kemp] sued Republic National Life Insurance Company [Republic] to recover medical benefits under a group policy. Republic had paid her $144 and insisted that it did not owe the remaining $8,201.35 because of the medicare provision of the policy. Kemp received no medicare benefits, and was not entitled to do so; but Republic maintained that, since she was over 65 years and a U.S. citizen and resident, she could have enrolled in the government program prior to her sickness and hospitalization. Therefore, the insurer says, Kemp was "eligible for coverage under Medicare" and must exclude from her recovery under Republic's policy what she might thereby have obtained from medicare.

The district court construed the policy as Republic contends. We do not. We read the provision to reduce Republic's obligation by the amount of the insured's medicare benefit—not to reduce Republic's obligation and the insured's total benefits to less than the insured's expense by the amount she could have obtained if she had been enrolled in medicare.

There are no disputed facts. It is agreed that but for section 30, the last section of the policy, Republic would owe Kemp the full $8,345.35 for medical expenses incurred when she was hospitalized in 1978 for cancer of the colon. The policy states that Republic will pay hospital benefits: "the Company will pay the expense actually incurred for Room and Board, . . . necessary services and supplies . . ." etc. And medical benefits: "the Company will pay the expense actually incurred for treatment by a legally qualified physician . . ." etc.

■ The controversy centers on the two sentences (italicized below) of the paragraph captioned "Integration of Benefits With The Medicare Program" in section 30, which section reads:

### SECTION 30—MEDICARE PROVISION

This Provision does not apply to Life Insurance Benefits, Accidental Death and Dismemberment Benefits, or benefits payable for any loss of time on account of disability, if any such benefits are provided in the Policy.

Wherever used in this Provision, the term "Medicare" refers to Health Insurance for the Aged as provided under both Parts A and B, Title XVIII of the Social Security Act, as amended from time to time.

### INTEGRATION OF BENEFITS WITH THE MEDICARE PROGRAM

*With respect to each Insured Person who is eligible for coverage under Medicare, a benefit otherwise payable under the Group Policy shall be reduced by the amount of any similar Medicare benefit. It will be presumed that each Insured Person eligible for coverage under Medicare became covered for all parts of Medicare on the earliest possible date and has maintained such coverage in force.* [Emphasis ours]

If the Policy contains a "Coordination of Benefits" provision, the definition of "Plan" contained therein shall not be construed to include coverage under Medicare.

Republic reads the first sentence in the "integration of benefits" paragraph to provide that a deduction is made in benefit for any individual insured who is eligible to receive, *or to have enrolled and received,* a medicare benefit. The insured is thus "eligible for coverage under Medicare." To be consistent with that reading, Republic reads the second sentence to provide a conclusive presumption that the insured was in fact covered under medicare as of the date of first eligibility.

The effect of this reading is to deprive one in Kemp's position virtually of all protection and to render her Republic hospitalization coverage virtually worthless. When her husband died in 1968, she checked at the Social Security office and was told that he had paid only one or two quarters into the system and she was not entitled to any Social Security benefits. She did not apply for medicare benefits because she did not think she was eligible. She read her insurance policy from Republic and disregarded section 30 because she thought it had no application to her.

Republic would have it apply to anyone who could have voluntarily enrolled in medicare and paid the monthly premiums required of one who is not automatically enrolled.[1]

The average insured—and, we think, the average judge—would construe the policy to this drastic effect only if the words certainly require it. We do not read them to do so. The policy could easily have said that one entitled to enroll voluntarily under the medicare law would lose Republic benefits whether or not she obtained medicare benefits, so long as she could have enrolled in time to have the hospitalization covered by a medicare benefit. Republic's policy does not say this; it says that Republic's benefit otherwise payable is to be reduced by "any similar Medicare benefit." The caption headlines "integration of benefits." One who is eligible to enroll, but has not enrolled, is not entitled to receive any "benefits."

If the words "who is eligible for coverage" stood alone, we could regard them as ambiguous: meaning either an individual who is entitled to enroll and obtain coverage or one who is eligible to obtain medicare's coverage of a particular loss or expense. We read the words to different

effect in the two sentences. Read with the total paragraph, we must give these words in the first sentence the second meaning.[2]

We agree with Kemp that the second sentence has meaning only if the exclusion itself applies where the insured is eligible for medicare *benefits*. There is no need to presume or prove coverage under medicare, beginning at the earliest date and maintained in force, if eligibility to enroll ends the matter. The second sentence means that eligibility, without further proof of receipt of benefit, proves parts A and B coverage in fact. The policy says "presume" and a mere presumption (not "conclusive" or "irrebuttable" or "of law") is hardly a strange expression. It follows, simply, that the insured must prove lack of coverage and benefit, and Kemp did—of all (Parts A and B) coverage. Republic, on the other hand, would rewrite the second sentence as a conclusive presumption—only to create a redundancy.

Having read the learned trial judge's opinion which agreed with Republic's construction of the policy, we must deny Kemp's contention that she is entitled to penalties and attorney fees under La. Rev.Stat.Ann. § 22:657 (West 1978), which applies only when the insurer is arbitrary and capricious and refuses to pay without probable cause.

The judgment is REVERSED and the cause REMANDED.

RANDALL, Circuit Judge, dissenting:

I dissent. In my view, the district judge was correct when he found the medicare provision of the contract to be clear and free of ambiguity and to preclude the recovery by the plaintiff from the defendant of those costs which would have been paid

---

1. Kemp could qualify for Part A of the medicare program if she enrolled in Part B of the program; she could enroll in Part B of the program because she was over 65 and both a United States citizen and resident. 42 U.S.C. § 1395i–2; 42 U.S.C. § 1395o.

2. The Louisiana law, which applies in this diversity suit, favors the insured in the event of ambiguity: "the policy provisions are construed most favorably to the insured and against the insurer. Of the permissible constructions, the courts adopt that which effectuates the insurance over that which defeats it." *Snell v. Stein*, 261 La. 358, 259 So.2d 876, 878 (1972).

by medicare. Since the district judge's opinion was not published, I reproduce it below in order to set forth the reasons for his conclusion, reasons with which I agree.

EDWARD J. BOYLE, Sr., District Judge:

This action to recover medical benefits under an insurance policy has been submitted for adjudication upon stipulated facts, the deposition of the plaintiff and memoranda of counsel.[1] All third-party indemnity issues have been severed.[2] The sole issue to be decided is whether the medicare provision of the insurance contract[3] bars recovery by the plaintiff. The parties disagree as to the meaning of the phrase "eligible for coverage under Medicare" in the third paragraph of the exclusionary clause.

Several state rules of construction regarding insurance contracts are relevant to our determination of this issue. If the language of the contract term is clear, it will be enforced to effect the intent of the parties. LSA–C.C. art. 1945(3). Exclusionary clauses are to be construed strictly; ambiguous contract terms are to be construed in favor of the insured. *Snell v. Stein*, 261 La. 358, 259 So.2d 876, 878, 879 (1972).

1. *See* Record Document No. 29. Although the Stipulation of Facts filed by counsel for the defendant was not signed by counsel for the plaintiff, counsel for plaintiff accepted the stipulation in his memorandum. *See* Record Document No. 31 at page 1.

2. *See* Record Document No. 25. In view of the result reached, the third-party indemnity claims are moot and must be dismissed.

3. The policy provides:
   SECTION 30—MEDICARE PROVISION
   This Provision does not apply to Life Insurance Benefits, Accidental Death and Dismemberment Benefits, or benefits payable for any loss of time on account of disability, if any such benefits are provided in the Policy.
   Wherever used in this Provision, the term "Medicare" refers to Health Insurance for the Aged as provided under both Parts A and B, Title XVIII of the Social Security Act, as amended from time to time.
   INTEGRATION OF BENEFITS WITH THE MEDICARE PROGRAM

A brief explanation of the medicare eligibility provisions is necessary to understand the issues in this case. Medicare is divided into two parts, A and B, each of which has its own qualification requirements. Part A is generally for hospital costs; Part B covers chiefly physician costs. Under the statutory provisions and regulations, some persons qualify automatically for coverage under both parts.[4] Plaintiff, because she was not eligible to receive Social Security retirement benefits,[5] could not qualify automatically for either or both Part A and/or Part B coverages. Plaintiff could qualify for Part A of the program if she enrolled in Part B of the program; plaintiff could enroll in Part B of the program because she was over 65 and both a United States citizen and resident.[6] The only difference between those persons automatically enrolled and those who must enroll themselves in the program is that the latter group must pay premiums for Part A of the program.[7]

Plaintiff admits that she could have voluntarily enrolled in the entire medicare program: "There is no dispute that the plaintiff could have, if she wished, taken affirmative steps with respect to medicare/medicade [*sic*] benefits and obtained through Parts A and B of the medicare program payments made on her behalf for substan-

With respect to each Insured Person who is eligible for coverage under Medicare, a benefit otherwise payable under the Group Policy shall be reduced by the amount of any similar Medicare benefit. It will be presumed that each Insured Person eligible for coverage under Medicare became covered for all parts of Medicare on the earliest possible date and has maintained such coverage in force.
If the Policy contains a "Coordination of Benefits" provision, the definition of "Plan" contained therein shall not be construed to include coverage under Medicare.

4. 42 U.S.C. § 1395c; 42 U.S.C. § 1395*o*; 42 C.F.R. 405.210.

5. *See* Plaintiff's Deposition, Record Document No. 21, at pp. 22–23.

6. 42 U.S.C. § 1395i–2; 42 U.S.C. § 1395*o*.

7. 42 U.S.C. § 1395i–2(d). Both groups must pay premiums for Part B of the plan. 42 U.S.C. § 1395r.

tially all of her in-patient hospital expenses as well as physical expenses." [8] Plaintiff contends, however, that because Part A of the program was available to her only after she enrolled in Part B of the program, she was not "eligible for coverage under Medicare" as contemplated by Section 30 of the policy. We cannot agree.

The medicare clause of the contract is quite explicit that the term "medicare" includes both Parts A and B of the program. Simply because Mrs. Kemp had to enroll in Part B before she could enroll in Part A does not significantly distinguish her from other insureds. The fact remains that *all* of those insured were required to become enrolled in the entire medicare program. We find that Mrs. Kemp was "eligible for coverage under Medicare" within the clear meaning of the contract.

Plaintiff further contends that the two sentences of paragraph three of the medicare provision create an ambiguity in the policy. If in sentence one of paragraph three "eligible for coverage" means plaintiff must enroll in the medicare program, there would be no need for the presumption in sentence two that plaintiff actually became enrolled. This is simply not what the two sentences say.

The first sentence states that if one is "eligible for coverage under medicare," the insurer will not pay those charges covered by the medicare program. It does not require that the insured enroll in the program, but merely that the insured be eligible to enroll. The presumption in the second sentence does not make the first sentence conditional. The presumption is that coverage under medicare began at the earliest possible date, not that the insured actually became enrolled as plaintiff contends. There is no conflict or ambiguity created by the two sentences of paragraph three.

Finally, plaintiff asserts that the presumption that the plaintiff "became enrolled" in the medicare program is a rebuttable one and that the evidence clearly indicates that the plaintiff did not become covered prior to her surgery.[9] If we were to hold that the presumption that plaintiff "became covered" is a rebuttable one, the sentence would be meaningless. If a plaintiff need only show that he has not obtained medicare coverage to defeat the presumption, the contract language could never apply. A contract provision should be construed in a manner which gives it meaning rather than rendering it nugatory. LSA–C.C. art. 1951.

We find the medicare contract provision to be clear and explicit. There is no ambiguity to resolve. Plaintiff was eligible to receive medicare benefits but failed to enroll in the program. She is not entitled to recover those costs from the defendant which would have been paid by medicare.

Plaintiff seeks penalties and attorney's fees from defendant under LSA–R.S. 22:657 for refusing to pay her claim within thirty (30) days of notice and proof of claim. Since we find she is not entitled to payment under the policy, plaintiff is not entitled to such an award.

Accordingly, plaintiff's complaint will be dismissed at plaintiff's costs. The third-party claims of the defendant for indemnity will be dismissed for mootness.

---

**8.** *See* Record Document No. 31 at p. 4.

**9.** Plaintiff's memorandum, at page 4, states: "There is no dispute, and no evidence to substantiate the contention that she did in fact enroll. The presumption of fact as set forth in Section 30 of the policy is not conclusive, but merely a rebuttable presumption." *See* Record Document No. 31.